IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KIM FITZPATRICK COLEMAN,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>UTAH STATE CHARTER SCHOOL BOARD, et al.,<br><br>Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:10-CV-1186-TC |

Plaintiff Kim Fitzpatrick Coleman brought several claims against the Utah State Charter

School Board (SCSB); members of the SCSB and the director of the SCSB, Marlies Burns,

(collectively "the Individual Defendants"); and the SCSB's attorney, Carol Lear.  Ms. Coleman

alleges several causes of action under 42 U.S.C. § 1983, challenges the constitutionality of two

Utah statutes, and alleges violations of the Utah Constitution and state law.  Defendants have

now filed a motion to dismiss all causes of action against each of the Defendants.[1]

For the reasons set forth, and as more fully detailed, below, Defendants' motion to

dismiss (Dkt. No. 9) is GRANTED IN PART WITH PREJUDICE and GRANTED IN PART

WITHOUT PREJUDICE.

---

[1] Ms. Coleman voluntarily withdrew her sixth, eleventh, and twelfth causes of action.

## BACKGROUND[2]

In 2006, Ms. Coleman co-founded the charter school Monticello Academy (Monticello). Monticello is operated by a private Utah nonprofit corporation, Monticello Academy, Inc. (MAI). Ms. Coleman is the former director of Monticello and former Chief Officer (CO) of MAI.

As the director of Monticello, Ms. Coleman was engaged in trying to expand the school to, among other things, add grades ten through twelve.  To do so, Monticello had to apply to the SCSB.  During the application process, Defendant Carol Burns submitted a list of concerns and deficiencies (that according to Ms. Coleman were baseless allegations) about Monticello to the SCSB and Monticello.  Despite Ms. Coleman's requests, Ms. Burns never provided evidence to support her allegations.  And after a hearing held before the SCSB on Monticello's application for expansion, Ms. Burns accidentally sent an email letter denying Monticello's application to several people, including Ms. Coleman.  The email was sent on March 26, 2008, but the letter was post-dated April 22, 2008, after the SCSB was to make its decision.  Ultimately, the SCSB did not deny or approve the application.  This uncertainty led Ms. Coleman to retain the law firm of Stoel Rives, an action which allegedly instigated the SCSB's vindictive investigation against Ms. Coleman and Monticello.

The SCSB is a statutorily created government entity that is required to review and evaluate the performance of charter schools, hold those schools accountable for their performance, and monitor charter schools for compliance with federal and state laws, rules, and regulations.  As a part of those duties, SCSB investigated Monticello.  Ms. Coleman alleges that

---

[2] The facts in this section are taken from the Complaint.

the investigation was done as part of SCSB's personal vendetta against her.  As a result of the investigation, the SCSB issued findings concerning Ms. Coleman's administration of special educational services as Director of Monticello.  Specifically, the SCSB found that Ms. Coleman failed to authorize and provide appropriate special education services as mandated by law, withheld pertinent information in a Utah State Office of Education special education compliance review, and created an environment where special education services were purposefully withheld from Monticello's special education students.  Ms. Coleman alleges that these findings are baseless and intended to negatively affect her reputation.

Based on the findings, the SCSB issued directives to Monticello that required, among other things, that Monticello remove Ms. Coleman as director and bar her from serving in any capacity with the school, including on the board of MAI.  Ms. Coleman asked the SCSB for documentation to support the allegations in the findings and submitted several GRAMA requests seeking all documentation and support for the findings.  The findings were later ratified by the Utah Office of Education and the Utah Board of Education.  Ms. Coleman alleges that the findings and directives and their foreseeable consequences violated her state and federal rights and constituted tortious activity under state law.

## ANALYSIS

### Standard of Review

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations.  Tal v. Hogan, 453 F.3d 1244, 1252 (2006), cert. denied, 127 S. Ct. 1334 (2007); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).

3

Conclusory allegations are allegations that "do not allege the factual basis" for the claim.  Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).  See also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based" (emphasis added)).  The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  And although all reasonable inferences must be drawn in the non-moving party's favor,  Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Stating a claim under Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

## General Matters

### The SCSB is Not a "Person" Under 42 U.S.C. § 1983

Section 1983 provides a remedy against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  To be sued under § 1983, an entity must be a "person" as that term has been defined by the courts.  Ambus v. Utah State Bd. of Educ., 858 P.2d 1372, 1376 (Utah 1993) (citing Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989)). "Neither the state nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a 'person' within the

4

meaning of § 1983." Harris v. Champion, 51 F.3d 90, 905-06 (10th Cir. 1995).

The District of Utah has considered at length whether the SCSB is an arm of the state (and entitled to Eleventh Amendment Immunity) and found that it is. V.W. v. DaVinci Acad. of Sci. & the Arts, No. 1:09-cv-127-TS, 2010 WL 3258326, at *3 (D. Utah Aug. 17, 2010) (slip-opinion) (considering the four relevant factors, the court found that "the State School Boards [including the state charter school board] are 'arms of the state' entitled to Eleventh Amendment Immunity"). Accordingly, the SCSB is not a "person" within the meaning of § 1983. Id.

Because the SCSB is not a "person" within the meaning of § 1983, Ms. Coleman's § 1983 claims against the SCSB are DISMISSED WITH PREJUDICE.[3]

**The Individual Defendants and Ms. Lear Sued in Their Official Capacities are Not "Persons" Under 42 U.S.C. § 1983**

A state official acting in his or her official capacity is not a "person" within the meaning of § 1983. Harris, 51 F.3d at 905-06. Because the Individual Defendants and Ms. Lear, like the SCSB itself, are state officials, and they were acting in their official capacities, they are not "persons" within the meaning of § 1983. Ms. Coleman's § 1983 claims brought against them in their official capacities are DISMISSED WITH PREJUDICE.[4]

**Qualified Immunity**

To the extent that Ms. Coleman has alleged claims against the Individual Defendants and Ms. Lear in their individual capacities, those Defendants are "persons" within the meaning of § 1983. But the doctrine of qualified immunity protects government officials "from liability for

---

[3] These are the first, second, third, fifth, eighth, and ninth causes of action.

[4] These are the first, second, third, fifth, eighth, and ninth causes of action.

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Weigel v. Broad, 544 F.3d 1143, 1153 (10th Cir. 2008) (quoting Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001)).  This does not require that the plaintiff show that the very act in question was previously held unlawful.  Rather, the contours of the law "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002).

**Specific Causes of Action**[5]

**1. 1st Amendment – Freedom of Association and Retaliation**[6]

Intimate Association[7]

"[T]he Constitution protects 'certain kinds of highly personal relationships.'" Overton v. Bazzetta, 539 U.S. 126, 131 (2003).  "[T]he relationships that might be entitled to this sort of

---

[5] The following causes of action are listed and discussed according to the count numbers alleged in the Complaint.

[6] Ms. Coleman brought her first, third, sixth (withdrawn), eighth, and ninth causes of action directly under the United States Constitution.  Ms. Coleman agrees that these causes of action "should be considered by this Court . . . as . . . causes of action against Defendants under 42 U.S.C. § 1983."  (Mem. Opp. [Dkt. No. 18] at 2.)

[7] In the Tenth Circuit, the Fourteenth Amendment, not the First Amendment, is the source of the right to intimate or familial association.  Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir. 1993). The court construes Ms. Coleman's claim of intimate association as a claim under the Fourteenth Amendment.  Defendants contend that, even if so construed, it must be dismissed.

constitutional protection . . . are those that attend the creation and sustenance of a family," which include marriage, childbirth, the raising and education of children, and cohabitation with one's relatives.  Roberts v. United States Jaycees, 468 U.S. 609, 619 (1984).  Such protected relationships involve "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."  Id. at 620.

In her complaint, Ms. Coleman alleges that the Defendants' actions infringed on her ability to generally associate with Monticello students, teachers, administrators, and other parents.  The Constitution does not recognize such a "generalized right of 'social association.'" City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989).  Ms. Coleman attempts to distinguish her allegations from those of general association by stating in her opposition that the "network of personal associations" that Ms. Coleman had at Monticello "was a limited group, bound together by shared values, family relations and the commitment to educate and raise their children in a specific fashion."  (Mem. Opp. [Dkt. No. 18] at 6.)  But this allegation is not contained in the complaint and cannot be considered.  Looking only at the allegations contained in the complaint, Ms. Coleman has not alleged a violation of constitutionally protected rights.

Assuming that Ms. Coleman did allege a violation of her right to intimate association, that right is not clearly established.  There is no Supreme Court or Tenth Circuit case on point or any line of precedent that would alert the Defendants that they were violating Ms. Coleman's rights.  In fact, there are several cases in which courts have declined to extend constitutional protection to friendships, associations with acquaintances, or professional relationships.  See, e.g., Copp v. Unified Sch. Dist. No. 501, 882 F.2d 1547, 1551 (10th Cir. 1989) (finding school

custodian's close friendship with the school's principal was not protected as an intimate association); <u>King v. Knoll</u>, 399 F. Supp. 2d 1169, 1182 (D. Kan. 2005) (finding relationship between employer and employee not protected by the constitution); <u>Sedillos v. Bd. of Educ.</u>, No. 1:03-cv-1526-EWNBNB, 2005 WL 2086008, at *30 (D. Colo. Aug. 29, 2005) ("the right to associate does not protect emotional bonds between public employees"); <u>Ortiz v. San Miguel Cnty.</u>, 955 F. Supp. 1338, 1341 (D.N.M. 1996) (finding discharged public employee's friendship with former county commissioners who lost their positions in election was not an intimate relationship protected by the constitution).  Ms. Coleman even concedes that she "cannot point to a case that shows these precise government actions unlawful."  (Mem. Opp. [Dkt. No. 18] at 9.) But she contends that "precedent going back over 70 years that establishes the protected First Amendment rights of parents to be involved in the education of their children" shows clearly established law.  (<u>Id.</u>)  This precedent does not address intimate associations with other students, teachers, parents, and administrators and would not put the Defendants on notice that their alleged actions violated Ms. Coleman's right to intimate association.

Because there is no clearly established law showing that Ms. Coleman has a constitutional right to intimate association with other students, teachers, parents, and administrators, the Individual Defendants and Ms. Lear are entitled to qualified immunity. Accordingly, Ms. Coleman's intimate association claim in her first cause of action is DISMISSED WITH PREJUDICE.

<u>Familial Association</u>

Ms. Coleman alleges that the Defendants' actions "infringed on her fundamental right to direct the upbringing and education of her children, and of her right to associate with her

family."[8]  (Compl. ¶ 345.)  These are clearly established rights.  See Troxel v. Granville, 530

U.S. 57, 65 (2000) ("the interest of parents in the care, custody, and control of their children . . .

is perhaps the oldest of the fundamental liberty interests recognized"); Pierce v. Soc'y of the

Sisters of the Holy Names of Jesus & Mary, 268 U.S. 510, 534 (1925) (recognizing the right to

"direct the upbringing and education of children").  But these are not the rights that the alleged

facts actually support a violation of.  Rather, the allegations show that the SCSB issued directives

that Monticello: remove Ms. Coleman as the director of the school; prohibit her from ever

working at/for Monticello; not allow her on campus in any capacity or activity that causes

intimidation or disruption of school instruction; and prohibit her from access to the school or

staff either directly or by email.  (Compl. ¶¶ 181, 184, 193.)  These facts support a claim that

Defendants interfered with Ms. Coleman's particularized right to be involved in specific ways in

the upbringing of her children.  Such a particularized right is not clearly established and Ms.

Coleman has pointed to no case law to the contrary.  See McCook v. Springer Sch. Dist., 44 Fed.

App'x 896, 910 (10th Cir. 2002) (unpublished) (finding summary judgment proper where

plaintiff parents presented no authority establishing a constitutional right to go onto school

property).  Based on the factual allegations contained in the complaint, the Individual Defendants

and Ms. Lear are entitled to qualified immunity.

It is possible, however, that given leave to amend Ms. Coleman could make factual

allegations that the Defendants violated her clearly established rights and did so with the

---

[8] This is a conclusory allegation not supported by factual allegations and need not be considered
by the court.  Tal, 453 F.3d at 1252

requisite intent.  Accordingly, Ms. Coleman's familial association claims under the United States

Constitution in her first and ninth causes of action are DISMISSED WITHOUT PREJUDICE.

Retaliation

When evaluating a freedom of speech retaliation claim brought by a public employee,[9]

courts apply a five-step inquiry known as the Garcetti/Pickering analysis:

> First, the court must determine whether the employee speaks "pursuant to [his]
> official duties."  If the employee speaks pursuant to his official duties, then there is
> no constitutional protection because the restriction on speech "simply reflects the
> exercise of employer control over what the employer itself has commissioned or
> created."  Second, if an employee does not speak pursuant to his official duties, but
> instead speaks as a citizen, the court must determine whether the subject of the
> speech is a matter of public concern.  If the speech is not a matter of public concern,
> then the speech is unprotected and the inquiry ends.  Third, if the employee speaks
> as a citizen on a matter of public concern, the court must determine "whether the
> employee's interest in commenting on the issue outweighs the interest of the state as
> employer." Fourth, assuming the employee's interest outweighs that of the employer,
> the employee must show that his speech was a "substantial factor or a motivating
> factor in [a] detrimental employment decision."  Finally, if the employee establishes
> that his speech was such a factor, "the employer may demonstrate that it would have
> taken the same action against the employee even in the absence of the protected
> speech."

Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202 (10th Cir. 2007) (internal

citations omitted).  The first three steps in the analysis are questions of law for the court.  Id.

The Tenth Circuit has described speech made pursuant to official duties as speech that is

"generally consistent with 'the type of activities [the employee] was paid to do.'"  Id. at 1203

(quoting Green v. Bd. of Cnty. Comm'rs, 472 F.3d 794, 801 (10th Cir. 2007)).  Matters of public

concern are "those of interest to the community, whether for social, political, or other reasons."

---

[9] Charter school employees are considered public employees.  See Brammer-Hoelter v. Twin
Peaks Charter Acad., 492 F.3d 1192, 1202 (10th Cir. 2007) (applying public employee retaliation
test to teachers who were employees of a charter school).

Brammer-Hoelter, 492 F.3d at 1205.  In determining whether speech is a matter of public concern, the court can consider the motive of the speaker.  Id.  "[S]peech that simply airs 'grievances of a purely personal nature'" does not involve matters of public concern.  Id.

Ms. Coleman contends that the Garcetti/Pickering analysis does not apply to her claim because a third-party, the Defendants, and not her employer retaliated against her.  She contends that the three-part test established in Worrell v. Henry, 219 F.3d 1197, 1212-13 (10th Cir. 2000) for "allegations of retaliatory conduct . . . directed at a defendant who is not the plaintiff's employer and when there is no contractual relationship between them" applies.  Id. at 1212.  But the court in Worrell made clear that the Garcetti/Pickering analysis is appropriate for "adverse actions taken by employers—individuals . . . who have the authority to make hiring and firing decisions and take other personnel actions."  Id. at 1209-10.  This includes actions taken by a school board against a teacher.  Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563 (1968) (involving a retaliation claim brought by a teacher against the school board after it dismissed him for sending a letter to a local newspaper).  And Utah law gives the SCSB the authority to, among other things, remove a charter school director, finance officer, or governing board member—the very actions Ms. Coleman alleges the Defendants took against her.  Utah Code Ann. § 53A-1a-509.  Accordingly, the Garcetti/Pickering analysis, and not the Worrell analysis, applies.

Ms. Coleman's complaint alleges two types of petitions: (1) the petitions submitted regarding Monticello's application to expand to grades ten through twelve before the SCSB's January 2009 findings and directives, and (2) those petitions seeking information on the January

2009 findings and directives, which were submitted between January 2009 and the issuance of the August 2009 findings and directives.

Ms. Coleman's complaint makes clear that actions she took in the first set of petitions were taken pursuant to her official duties.  Almost every factual allegation involving those petitions states that "Monticello, through Ms. Coleman" took the protected action or identifies Monticello as the actor.  (See, e.g., Compl. ¶¶ 87, 89, 92, 109, 171.)  According to the allegations, Ms. Coleman's first set of petitions were made pursuant to her official duties as the director of Monticello—she was effectively acting on behalf of Monticello and as its advocate.  Accordingly, the first set of petitions are not protected and the first cause of action based on them is DISMISSED WITH PREJUDICE.

The complaint also makes clear that Ms. Coleman's second type of petitions were made on behalf of herself to gather "information related to the claims against her."  (See, e.g., Compl. ¶¶ 238-40, 242.)  These petitions were designed to obtain information about the claims levied by the SCSB against Ms. Coleman personally.  Such speech action does not involve a matter of public concern.  See Arndt v. Koby, 309 F.3d 1247, 1253 (10th Cir. 2002) (finding employee's speech was not a matter of public concern where the employee sought, through the speech, to "clear *her* personal reputation and restore *her* personal good name").  Ms. Coleman's complaint does not allege that she was engaged in speech involving a matter of public concern and accordingly fails to state a claim.  The first cause of action based on the second set of petitions is DISMISSED WITH PREJUDICE.

**2. 43 U.S.C. § 1983 – Procedural and Substantive Due Process – Public Employee**

Procedural Due Process

*Property Interest*

Ms. Coleman alleges that she "had a protected property interest in continued employment as the director of Monticello Academy." (Compl. ¶ 261.) But Ms. Coleman did not allege the basis of her property interest. In her response to the motion to dismiss, Ms. Coleman, for the first time, alleges that her employment as director of Monticello was for a specified time, the time until the high school was completed.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). As a threshold matter, Ms. Coleman must sufficiently allege that she possesses a protected property interest. "In the employment context, a property interest is 'a legitimate expectation in continued employment.'" Hesse v. Town of Jackson, 541 F.3d 1240, 1245 (10th Cir. 2008). The court looks at state law to determine whether such a property interest exists. "Under Utah law, an employment contract with no specified term of duration is an at-will relationship and . . . no property interest exists." Lighton v. Univ. of Utah, 209 F.3d 1213, 1221 (10th Cir. 2000).

Here, Ms. Coleman's conclusory allegation that she had a protected property interest is insufficient. If Ms. Coleman alleged that she was employed as director of Monticello for a specified period of time, as she did in her response, Ms. Coleman could allege a protected property interest. See Kingsford v. Salt Lake City Sch. Dist., 247 F.3d 1123, 1131 (10th Cir. 2001) (The presumption that an employment contract is at-will "can be overcome by an

affirmative showing by the plaintiff that the parties . . . impliedly . . . agreed to terminate the relationship for cause alone." (quoting <u>Berube v. Fashion Ctr., Ltd.</u>, 771 P.2d 1033, 1044 (Utah 1989))).  Accordingly, Ms. Coleman's procedural due process claim based on a property interest contained in her second cause of action is DISMISSED WITHOUT PREJUDICE.

  *Liberty Interest*

  The Fourteenth Amendment's due process clause entitles a public employee to certain procedures when her government employer threatens her liberty interest in her "good name and reputation as it affects [her] protected property interest in continued employment." <u>Workman v. Jordan</u>, 32 F.3d 475, 480 (10th Cir. 1994).  Ms. Coleman must meet a four-part test to show that her liberty interest was violated: (1) the statements impugned the good name, reputation, honor, or integrity of the employee; (2) the statements were false; (3) the statements occured in the course of terminating the employee or must foreclose other employment opportunities; and (4) the statements were published.  <u>Id.</u> at 480-81.  Each of the four elements must be met.

  Here, Ms. Coleman's complaint fails to meet the first element—that the <u>Individual Defendants</u> and <u>Ms. Lear</u> made statements that impugned her good name, reputation, honor, or integrity.  Ms. Coleman relies on the statements made in the SCSB's findings and directives.  But these are not statements made by the Individual Defendants or Ms. Lear, who are the only remaining Defendants.  Accordingly, Ms. Coleman's liberty interest aspect of her procedural due process claim, as plead, fails.  But it is possible that, given leave to amend, Ms. Coleman will be able to allege that the remaining Defendants made statements that infringed upon her liberty interest.  Accordingly, Ms. Coleman's procedural due process claims based on a liberty interest

14

contained in her second and fifth causes of action, and her constitutional defamation claim[10] in her eighth cause of action, are DISMISSED WITHOUT PREJUDICE.

Substantive Due Process

To maintain a substantive due process claim, a plaintiff must allege more than that a "government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power . . . [the plaintiff] must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscious shocking." Becker v. Kroll, 494 F.3d 904, 922-23 (10th Cir. 2002) (dismissing substantive due process claim because the defendants' alleged groundless investigation designed to obtain civil penalties from the plaintiff and withholding evidence tending to exonerate the plaintiff did not rise to the level of a substantive due process claim).

Ms. Coleman has not alleged sufficient facts against each particular Defendant to show that their conduct rises to the level of "conscious shocking" conduct. Most all of Ms. Coleman's claims are plead against the SCSB, acting through its members and director. These allegations fail to show any conduct by each individual Defendant that would qualify for a substantive due process claim. This is especially true in light of the fact that the substantive due process standard "is met in only the most extreme circumstances, typically involving some violation of physical liberty or personal physical integrity." Id. at 923. Such is not the case here. Rather, Ms. Coleman's allegations against the Defendants at most show that they "intentionally or recklessly .

---

[10] Because the four-part Workman test applies to claims for constitutional defamation, the analysis of Ms. Coleman's procedural due process liberty claim applies equally to her constitutional defamation claim.

. . abused or misused government power," which is insufficient.  Id.  Accordingly, Ms.

Coleman's substantive due process claims in her second and fifth causes of action are

DISMISSED WITH PREJUDICE.

**3. 14th Amendment Equal Protection and Violation of Utah Constitution Article I Section 24 Uniform Operation of Laws**

42 U.S.C. § 1983 Claim - 14th Amendment Equal Protection

*Standing*

Defendants contend that Ms. Coleman lacks standing to challenge Utah Code Section

53A-1a-512(3) because she cannot show redressability—that a favorable ruling will redress the

alleged injury.  Ms. Coleman challenges the constitutionality of Section 53A-1a-512(3) and

alleges that it violates the Equal Protection Clause of the Fourteenth Amendment because it

denies charter school employees the protections offered to public school employees in the Utah

Orderly School Termination Procedures Act (UOSTPA), Utah Code Section 53A-8-101 through

-107.  But Ms. Coleman does not challenge the UOSTPA, which by its own terms applies only to

employees of school districts.  Utah Code Ann. § 53A-8-102.

To show standing, a plaintiff must demonstrate: (1) injury-in-fact; (2) causation; and (3)

redressability.  Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272, 1280 (10th Cir. 2002).

Redressability requires that a favorable ruling would redress the alleged injury.  Here, Ms.

Coleman's alleged injury is that she was not afforded the protection of the procedures outlined in

the UOSTPA.  But because the UOSTPA, by its own terms, does not apply to charter school

employees, even if the court finds Section 53A-1a-512(3) unconstitutional, Ms. Coleman would

not be entitled to the protection of UOSTPA.  Accordingly, Ms. Coleman cannot show redressability and lacks standing.

*Similarly Situated*

To state a valid equal protection claim, a plaintiff must "allege facts sufficient to establish that [she is] similarly situated" to another class of people.  Crider v. Bd. of Cnty. Comm'rs, 246 F.3d 1285, 1287 (10th Cir. 2001).  Ms. Coleman's complaint, at most, alleges that she is a public employee and entitled to the same benefits that other public employees, and specifically employees of Utah public schools, receive.  Ms. Coleman does not allege any ways in which a charter school employee is similarly situated to a public school employee.[11]  Because Ms. Coleman's complaint does not allege that she is similarly situated to public school employees, the equal protection claim must be dismissed.

*Rational Basis*

If Ms. Coleman had standing and sufficiently alleged that charter school employees are similarly situated to public school employees, the court would apply rational basis scrutiny because Ms. Coleman's claim does not involve a suspect class or a fundamental right.  See Teigen v. Renfrow, 511 F.3d 1072, 1083 (10th Cir. 2007).  "Under this standard, this court will uphold a government classification if it is 'rationally related to a legitimate government purpose or end.'"  Id.  (quoting Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d 1025, 1031-32 (10th Cir. 2007)).  And "[i]n the context of a motion to dismiss under 12(b)(6), this court accepts all of the allegations in the complaint as true and then considers these

---

[11] Ms. Coleman addressed this argument in her response and made several allegations for the first time of how charter school employees and public school employees are similarly situated.

'facts' according to the deferential rational basis standard." <u>Teigen</u>, 511 F.3d at 1083.  To survive a motion to dismiss, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." <u>Id.</u> (quoting <u>Brown v. Zavaras</u>, 63 F.3d 967, 971-72 (10th Cir. 1995)).

Even if Ms. Coleman were given leave to amend, she would not be able to allege facts establishing that the exclusion of charter school employees from the UOSTPA "is arbitrary and wholly irrational in a constitutional sense." <u>Teigen</u>, 511 F.3d at 1083-84.  The Utah legislature enacted the Utah Charter Schools Act with the purpose of "establish[ing] new models of public schools and a new form of accountability for schools that emphasizes the measurement of learning outcomes and the creation of innovative measurement tools."   Utah Code Ann. § 53A-1a-503.

The court concludes that the Utah legislature's grant of broad discretion to charter schools to tailor the terms of employment, including excluding charter school employees from the UOSTPA, is rationally related to the legitimate interest in establishing new models of public schools.[12]  <u>See</u> <u>Teigen</u>, 511 F.3d at 1084 ("[T]his court must independently consider whether there is any conceivable rational basis for the classification . . . . This determination is a legal question which need not be based on any evidence or empirical data.).

---

[12] Ms. Coleman acknowledges as much in her memorandum in opposition: "there may be a rationale for the non-application of the [U]OSTPA to Ms. Coleman in regard to her employment relationship with Monticello . . . such as discretion to hire and fire its employees without granting 'provisional employee' or 'career employee' status to charter school employees." (Mem. Opp. [Dkt. No. 18] at 35.)  But Ms. Coleman contends "this rationale does not apply to the blacklisting of Ms. Coleman." (<u>Id.</u>)  Because Ms. Coleman's equal protection claims challenge the constitutionality of Section 53A-1a-512(3), the rationale for the statute, and not the Defendatns' alleged blacklisting, is at issue.

Because the court finds there is a rational basis for the exclusion of charter school employees from the UOSTPA, Ms. Coleman's equal protection claim would be subject to dismissal, even if given leave to amend.  Accordingly, Ms. Coleman's equal protection claims in her third and fourth causes of action are DISMISSED WITH PREJUDICE.

<u>Uniform Operation of the Laws - Utah Constitution Article I, Section 24</u>

The federal equal protection clause and Utah's uniform operation of the laws provision "embody the same general principle: persons similarly situated should be treated similarly, and persons in different circumstances should not be treated as if their circumstance were the same." <u>Malan v. Lewis</u>, 693 P.2d 661, 669 (Utah 1984).  As a threshold matter, a plaintiff must demonstrate that the challenged statute "creates certain classes of persons derived from those who are similarly situated with respect to the purpose of the law."  <u>Kennecott Corp. v. Utah State Tax Comm'n</u>, 858 P.2d 1381, 1388 (Utah 1993) (internal citations and quotations omitted).  If there is such a classification, the court considers: "(1) whether the classification is reasonable, (2) whether the legislative objectives are legitimate, and (3) whether there is a reasonable relationship between the two."  <u>Tindley v. Salt Lake City Sch. Dist.</u>, 2005 UT 30, ¶ 28, 116 P.3d 295 (quoting <u>Peterson v. Coca-Cola USA</u>, 2002 UT 42, ¶ 23, 48 P.3d 941).

As discussed above, Ms. Coleman's complaint fails to allege that she is similarly situated to public school employees.  And, as discussed above, even if Ms. Coleman did allege that she is similarly situated, Section 51A-1a-512(3) makes a reasonable classification based on a legitimate legislative objective and there is a reasonable relationship between the classification and the objective.  <u>See</u> <u>Utah Sch. Bds. Ass'n v. Utah State Bd. of Educ.</u>, 2001 UT 2, ¶ 21, 17 P.3d 1125 (finding, in case involving different constitutional challenge, that "[e]ach class of school and each

19

type of program has specific needs and must be managed to those needs"). Ms. Coleman's

uniform operation of the laws claims in causes of action three and four are DISMISSED WITH

PREJUDICE.

### 4. Unconstitutionality of Utah Code Section 53A-1a-512(3)

<u>Equal Protection and Uniform Operation of the Laws</u>

For the same reasons discussed above, Ms. Coleman's equal protection claim and her

uniform operation of laws claim in her fourth cause of action are DISMISSED WITH

PREJUDICE.

<u>Open Courts - Utah Constitution Article I, Section 11</u>

"Article I, section 11 of the Utah Constitution, which prescribes that all courts shall be

open and persons shall not be barred for using them to redress injuries, was not meant to create a

new right of action." <u>Madsen v. Borthick</u>, 658 P.2d 627, 629 (Utah 1983). Instead, the open

courts provision places limitations on the ability of the legislature to enact a statute that

"abrogates a cause of action existing at the time of its enactment." <u>Laney v. Fairview City</u>, 2002

UT 79, ¶ 50, 57 P.3d 1007. And "where no right of action is given or no remedy exists under the

common law or statute, this section creates none." <u>Burton v. Exam Ctr. Indus. & Gen. Med.</u>

<u>Clinic, Inc.</u>, 2000 UT 18, ¶ 18, 994 P.2d 1261.

Section 53A-1a-512(3)(a) merely excludes charter school employees from certain

administrative procedures under the UOSTPA. The UOSTPA itself applies only to employees of

Utah school districts, and has never applied to employees of charter schools. <u>See</u> Utah Code Ann.

§§ 53A-8-102, -104, -105. Section 53A-1a-512(3)(a) does not abrogate an existing cause of

action.  Accordingly, the open courts provision of the Utah Constitution is inapplicable.  Ms.

Coleman's open courts claim in her fourth cause of action is DISMISSED WITH PREJUDICE.

**5. 42 U.S.C. § 1983 – Procedural and Substantive Due Process – Private Employee**

Procedural Due Process

*Property Interest*

Although Ms. Coleman's fifth cause of action is styled as one based on her private

employment, it is unclear what, precisely, Ms. Coleman's alleged property interest is.  Ms.

Coleman alleges that the Defendants "prohibited Ms. Coleman from returning from her temporary

leave of absence and resuming her service on Monticello's governing board of directors, and from

returning to her position as CO of MAI."  (Compl. ¶ 185.)  Ms. Coleman was "appointed to serve

as Chief Officer . . . of MAI," and "in her capacity as CO of MAI, [she] was a private employee

employed by the corporation to operate and manage MAI."  (Id. ¶¶ 45-46.)  But in that capacity

she also served on Monticello's governing board.  (Id. ¶ 42 ("MAI's board of directors serve[d] as

the governing board of Monticello").)   Ms. Coleman took a voluntary leave of absence from her

dual position as CO of MAI and member of Monticello's governing board in April 2008, when

Ms. Coleman was appointed to serve as Director of Monticello.  (Id. ¶ 48.)  When all of the

allegations are taken together, it is unclear if Ms. Coleman alleges that the Defendants interfered

with her public employment (her position on the governing board of directors of Monticello as the

CO of MAI) or her private employment (her position as CO of MAI).

To the extent Ms. Coleman alleges that the Defendants prevented her from resuming

service on Monticello's governing board, including in her capacity as CO of MAI, her claim

would be based on a property interest as a public employee subject to the employment decisions

of the SCSB.  See Utah Code Ann. § 53A-1a-509 (giving the SCSB the authority to, among other things, remove a charter school director, finance officer, or governing board members).  As discussed above, Ms. Coleman has failed to allege a protected property interest, although she may be able to do so given leave to amend.

To the extent Ms. Coleman alleges that the Defendants prevented her from serving as the CO of MAI, independent from her position on Monticello's governing board, her claim would be based on a property interest as a private employee.  To state a claim of third-party interference with her private employment, Ms. Coleman need not allege more than at-will employment as CO of MAI.  See Traux v. Raich, 239 U.S. 33, 38 (1915) (An employee "has manifest interest in the freedom . . . to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will.").   Given leave to amend, it is possible that Ms. Coleman could be able to include allegations sufficient to state a claim based on Defendants' interference with her private employment as CO of MAI and not her public employment based on her position on Monticello's governing board as CO of MAI.  Accordingly, Ms. Coleman's fifth cause of action due process claim based on her property interest in her position as CO of MAI is DISMISSED WITHOUT PREJUDICE.

*Liberty Interest*

For the same reasons discussed above, Ms. Coleman's fifth cause of action procedural due process claim based on her liberty interest is DISMISSED WITHOUT PREJUDICE.

Substantive Due Process

For the same reasons discussed above, Ms. Coleman's fifth cause of action for substantive

due process is DISMISSED WITH PREJUDICE.

**6. Taking of Property**

Ms. Coleman voluntarily withdrew her sixth cause of action.  (Mem. Opp. [Dkt. No. 18] at

v.)

**7. Unconstitutionality of Utah Code Section 53A-1a-509**

United States Constitutional Challenge

*Standing*

Defendants contend that Ms. Coleman lacks standing to challenge Utah Code Section

53A-1a-509 because the SCSB did not remove Ms. Coleman under the powers granted to it by

Section 53A-1a-509.  Ms. Coleman contends that her complaint alleges that the Defendants relied

on the authority of Section 53A-1a-509 to remove her from her position at Monticello.

To have standing, "plaintiffs must allege (and ultimately prove) that they have suffered an

'injury in fact,' that the injury is fairly traceable to the challenged action of the Defendants, and

that it is redressable by a favorable decision."  Initiative & Referendum Inst. v. Walker, 450 F.3d

1082, 1087 (10th Cir. 2006).  In her complaint, Ms. Coleman alleges that the SCSB issued

directives and demands that she be removed as director of Monticello.  Ms. Coleman further

alleges that the SCSB's authority to do so "apparently arises from Utah Code Ann. § 53A-1a-

509." (Compl. ¶ 186.)  Although it is unclear whether the SCSB actually removed Ms. Coleman

and whether it did so relying on its authority under Section 53A-1a-509, the court must take Ms.

Coleman's allegations as true.  Doing so, Ms. Coleman has alleged an injury in fact.  But if during

23

the course of proceedings it becomes clear that the SCSB did not remove Ms. Coleman under its authority contained in Section 53A-1a-509, the court must dismiss for lack of standing.

*Affirmatively Linked Individual Defendants*

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). There must be an "affirmative link" between the alleged constitutional violation and an individual defendant's action or inaction. Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). So for Ms. Coleman's claim against each Individual Defendant and Ms. Lear to survive Defendants' motion to dismiss, Ms. Coleman must allege that the individuals personally participated in the alleged constitutional violations.

Ms. Coleman's constitutional challenge to Section 53A-1a-509 is based on the allegation that "the SCSB, through its members and Director acting in their official capacities, willfully and maliciously issued several 'Directives,'" which included that Ms. Coleman be removed as director of Monticello. (Compl. ¶ 181.) Ms. Coleman also alleges that the SCSB issued the findings and directives "along with Defendant Lear, who conspired with the Individual Defendants" and that the findings and directives were "based at least in part on Defendant Burns' allegations." (Id. ¶ 345.) Even viewed in a light most favorable to Ms. Coleman, these allegations do not allege that each of the Defendants personally participated in issuing the findings and directives and that there is an affirmative link between such participation and the alleged constitutional violation. But, given leave to amend, Ms. Coleman might be able to sufficiently allege personal participation. Accordingly, Ms. Coleman's challenge to Section 53A-1a-509 under the United States Constitution in her seventh cause of action is DISMISSED WITHOUT PREJUDICE.

<u>Open Courts - Utah Constitution Article I, Section 11</u>

As discussed above, the open courts provision places limitations on the legislature's ability to abrogate an existing cause of action.  <u>Laney</u>, 2002 UT 79, ¶ 50.  Section 53A-1a-509 merely grants authority to the SCSB to require charter schools to correct various deficiencies and authority to take certain corrective action if a charter school fails to correct the deficiencies.  The statute does not abrogate any existing cause of action or limit any potential remedy an affected school or individual might wish to pursue.  Accordingly, the open courts provision of the Utah Constitution is inapplicable.  Ms. Coleman's seventh cause of action open courts claim is DISMISSED WITH PREJUDICE.

### 8. Constitutional Defamation

For the reasons discussed above, Ms. Coleman's eighth cause of action for constitutional defamation is DISMISSED WITHOUT PREJUDICE.

### 9. Utah and United States Constitutions – Interference with Familial Association

<u>United States Constitution</u>

For the reasons discussed above, Ms. Coleman's ninth cause of action for interference with familial association brought under the United States Constitution is DISMISSED WITHOUT PREJUDICE.

<u>Utah Constitution</u>

In her ninth cause of action, Ms. Coleman alleges a violation of the Utah Constitution based on interference with familial association.  But Ms. Coleman does not specify which provisions of the Utah Constitution she alleges Defendants violated.  Given leave to amend, it is possible that Ms. Coleman will be able to state a claim under the Utah Constitution.  <u>See Jensen</u>

ex rel. Jensen v. Cunningham, 2011 UT 17, ¶ 68, 250 P.3d 465 (considering claim that defendants

violated plaintiffs' right to direct the medical care of their child under article I, sections 1 and 7 of

the Utah Constitution and a procedural due process claim under those sections); P.J. ex rel. Jensen

v. Utah, No. 2:05-CV-739-PGC, 2006 WL 1702585, at *14 (D. Utah June 16, 2006) (dismissing

claim of violation of the right to familial association under article I, section 25 of the Utah

Constitution because the provision is not self-executing).  Ms. Coleman's ninth cause of action for

interference with familial association brought under the Utah Constitution is DISMISSED

WITHOUT PREJUDICE.

**10. Intentional Inflection of Emotional Distress**[13]

The Notice of Claim is Insufficient Against All Defendants Except Ms. Burns[14]

Defendants contend that the notice of claim is insufficient to give the court jurisdiction

over the claims against the Defendants in their individual capacity because it fails to allege fraud

or malice.  Generally, the Utah Governmental Immunity Act (UGIA) shields government

employees from liability for tortious acts that occur during the course of the employment.  But a

plaintiff can avoid immunity by bringing a suit under an exception to the UGIA's general grant of

immunity.  One such exception is that the employee acted with fraud or malice.  Utah Code Ann.

§ 63-30-4.  "Under the UGIA's mandatory notice-of-claim provision, a claimant wishing to use

---

[13] Ms. Coleman's complaint specifically asserts an intentional infliction of emotional distress
claim against the Individual Defendants and Ms. Lear.  It does not assert a claim against the
SCSB.  Defendants appear to contend that the exception to waiver of immunity in the Utah
Governmental Immunity Act for "infliction of mental anguish" bars Ms. Coleman's claim.  But
the exception applies only to "governmental entities" and not to individuals such as the
Individual Defendants and Ms. Lear.

[14] Defendants concede that the notice of claim alleges fraud or malice against Ms. Burns.  (Reply
Mem. [Dkt. No. 25] at 12.)

this exception must reasonably alert the governmental entity . . . that the claims are based on employee fraud or malice." <u>Peak Alarm Co. v. Salt Lake City Corp.</u>, 2010 UT 22, ¶ 29, 243 P.2d 1221.

The UGIA does not require that the notice of claim against state employees in their individual capacity specifically allege fraud or malice. <u>Mecham v. Frazier</u>, 2008 UT 60, ¶ 19, 193 P.3d 630. Rather, the notice of claim taken as a whole "must be sufficient to reasonably alert the governmental entity of the nature of the claim—that the claimant seeks to bring a cause of action against a government employee personally due to the employee's fraudulent or malicious conduct." <u>Id.</u> In <u>Peak Alarm</u>, this requirement was met where the plaintiff once used the term "malice" and alleged that the officers lacked facts to support a good faith arrest, prosecuted him to punish him for his public opposition to the city's policy, and acted "for the purpose of harassing, intimidating, punishing, or otherwise *maliciously* inhibiting." 2010 UT 22, ¶ 31.

Here, Ms. Coleman's notice of claim is insufficient to put the Defendants on notice that she intended to bring a claim against them personally due to their fraudulent or malicious conduct. With the exception of Ms. Burns and Ms. Lear, Ms. Coleman does not allege any specific conduct of the Defendants. Although Ms. Coleman does allege that Ms. Lear "assist[ed] parents in their fight against Monticello in its investigation of Ms. Coleman," she did not include any facts in her notice of claim that indicate Ms. Lear was acting fraudulently or maliciously. (Notice of Claim [Dkt. No. 10-1] at 4.) The closest the notice of claim comes is the factual allegation that Ms. Lear claimed she was "sick and fed up with this 'we are above the law' attitude" of school administrators. (<u>Id.</u>) Even under the more relaxed requirements set forth in <u>Mecham</u> and <u>Peak Alarm</u>, Ms. Coleman's notice of claim is insufficient to give the court jurisdiction over the

Individual Defendants (except for Ms. Burns) and Ms. Lear.  Ms. Coleman is time-barred from

curing this defect in her notice of claim.  See Utah Code Ann. § 63G-7-402 ("a claim is barred . . .

unless notice of claim is filed . . . within one year after the claim arises").  Accordingly, Ms.

Coleman's tenth cause of action for intentional infliction of emotional distress against all

Defendants except for Ms. Burns is DISMISSED WITH PREJUDICE.

> Ms. Coleman Might be Able to State a Claim Against Ms. Burns

As discussed above, the intentional infliction of emotional distress claim remains only

against Ms. Burns.  Defendants contend that the complaint fails to allege conduct that rises to the

requisite level of extreme and outrageous conduct.  A claim for intentional infliction of emotional

distress requires more than "mere insults, indignities, threats, annoyances, petty oppressions, or

other trivialities."  Cabaness v. Thomas, 2010 UT 23, ¶ 38, 232 P.3d 486.  But, "while a single

insult, indignity, or threat may not give rise to liability for intentional infliction of emotional

distress, a continuous and ongoing pattern of the same may constitute extreme, intolerable, and

outrageous conduct and thus result in liability."  Id.  Given leave to amend, it appears that Ms.

Coleman might be able to allege that Ms. Burns engaged in such a continuous and ongoing

pattern, and that she did so with fraud or malice.  For this reason, Ms. Coleman's tenth cause of

action for intentional infliction of emotional distress against Ms. Burns is DISMISSED

WITHOUT PREJUDICE.

**11. - 12. Defamation, Slander, and Libel**

Ms. Coleman voluntarily withdrew her eleventh and twelfth causes of action.  (Mem. Opp.

[Dkt. No. 18] at v.)

28

**13. Intentional Interference with Economic Advantage**

Defendants contend that the court lacks jurisdiction to hear Ms. Coleman's intentional interference with economic advantage claim because Ms. Coleman's notice of claim did not identify this cause of action.

The UGIA requires individuals with claims against government entities to comply with the notice of claim requirements set forth in Utah Code Section 63-30-11.  The notice of claim must include "(i) a brief statement of the facts; (ii) the nature of the claim asserted; and (iii) the damages incurred by the claimant."  Utah Code Ann. § 63-30-11(3)(a).  "Failure to comply with these requirements results in a lack of jurisdiction."  Heideman v. Wash. City, 2007 UT App. 11, ¶ 12, 155 P.3d 900.  Strict compliance is required.  Id. ¶ 14.

Ms. Coleman's notice of claim listed seven claims, none of which are intentional interference with economic advantage.  The closest Ms. Coleman came to identifying this particular claim was to include the phrase "pendent state law claims."  Such a general description is insufficient.  See Heideman, 2007 UT App. 11, ¶¶ 13-14 (finding court lacked jurisdiction to hear intentional interference with economic advantage claim where plaintiff did not specifically include the claim in the notice of claim but included the phrase "other causes of action" and asserted that the document as a whole was sufficient to put the defendants on notice).  Because the notice of claim fails to indicate that Ms. Coleman intended to pursue an intentional interference with economic advantage claim, the court lacks jurisdiction to consider it.  See id. ¶ 14.  Ms. Coleman is time-barred from curing this defect in her notice of claim.  See Utah Code Ann. § 63G-7-402.  Ms. Coleman's thirteenth cause of action for intentional interference with economic relations advantage is DISMISSED WITH PREJUDICE.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 9) is:

- GRANTED WITH PREJUDICE on all § 1983 claims brought against the SCSB and the other Defendants in their official capacity; Ms. Coleman's intimate association claim and retaliation claim (cause of action 1); Ms. Coleman's substantive due process claims (causes of action 2 and 5); Ms. Coleman's equal protection challenges to Utah Code Section 51A-1a-512(3) under the Fourteenth Amendment and the Utah Constitution (causes of action 3 and 4); Ms. Coleman's claims brought under the Utah Constitution open courts provision (causes of action 4 and 7); Ms. Coleman's intentional infliction of emotional distress claim against all Defendants except for Ms. Burns (cause of action 10); and Ms. Coleman's interference with economic advantage claim (cause of action 13).

- GRANTED WITHOUT PREJUDICE on Ms. Coleman's familial association claim (causes of action 1 and 9); Ms. Coleman's procedural due process claims based on liberty and property interests (causes of action 2, 5, and 8); Ms. Coleman's constitutional challenge to Utah Code Section 53A-1a-509 under the United States Constitution (cause of action 7); and Ms. Coleman's intentional infliction of emotional distress claim against Ms. Burns (cause of action 10). For these claims, Ms. Coleman has three weeks from the date of this order to file a motion to amend with a supporting memorandum and proposed amended complaint. Ms. Coleman's proposed amended complaint must meet the requirements of Rule 11, taking into consideration the arguments made during the August 17, 2011, hearing, and should not include duplicative causes of action. Defendants have two weeks from the date of Ms. Coleman's motion to file a

response, at which time the court will set a hearing.  Ms. Coleman has ten days from the date of

Defendants' response to file a reply, if any.

As discussed during the August 17, 2011, hearing, Ms. Coleman's motion to amend (Dkt.

No. 27) is DENIED AS MOOT.

SO ORDERED this 28th day of September, 2011.


BY THE COURT:


_____
TENA CAMPBELL
United States District Judge