IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KIM FITZPATRICK COLEMAN,<br><br>            Plaintiff,<br><br>vs.<br><br>UTAH STATE CHARTER SCHOOL BOARD, et al.,<br><br>            Defendants. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:10-cv-1186-TC |

      Plaintiff Kim Coleman has brought several claims against the Utah State Charter School Board (SCSB); individual members of the SCSB (Brian Allen, Tom Morgan, Julie Adamic, Yolanda Francisco-Nez, Scott Smith, John Pingree, and Tim Beagley); the director of the SCSB (Marlies Burns); and the SCSB's attorney (Carol Lear). The court issued an order on September 28, 2011, in which it dismissed the claims against SCSB (because SCSB is not a "person" under § 1983) as well as several of the claims against the other defendants. The court dismissed the rest of Ms. Coleman's claims without prejudice and gave her leave to file an amended complaint. Ms. Coleman's motion to amend (Dkt. No. 34) is now before the court. In her Proposed Second Amended Complaint (Amended Complaint, filed as Dkt. No. 51), Ms. Coleman includes six causes of action. Two of the original defendants, Tim Beagley and Carol Lear, are not mentioned in the Amended Complaint and have been dismissed from the lawsuit. The remaining defendants have opposed Ms. Coleman's motion to amend on the grounds of futility, arguing that the

Amended Complaint fails to state a claim upon which relief may be granted.

For the reasons stated below, the court GRANTS in part and DENIES in part Ms. Coleman's motion to amend (Dkt. No. 34).  The court holds that Ms. Coleman may proceed on her first cause of action in which she alleges a violation of 42 U.S.C. § 1983 for loss of her public employment.  But the court dismisses the remaining five causes of action for failure to state a claim upon which relief may be granted and under the doctrine of qualified immunity.

## BACKGROUND[1]

In 2006, Ms. Coleman co-founded the charter school Monticello Academy (Monticello). Monticello is operated by a private Utah nonprofit corporation, Monticello Academy, Inc. (MAI). Ms. Coleman is the former director of Monticello and former Chief Officer (CO) of MAI.

As the director of Monticello, Ms. Coleman was engaged in trying to expand the school to, among other things, add grades ten through twelve.  To do so, Monticello had to apply to the SCSB.  During the application process, Defendant Marlies Burns submitted a list of concerns and deficiencies (that according to Ms. Coleman were baseless allegations) about Monticello to the SCSB and Monticello.  Despite Ms. Coleman's requests, Ms. Burns never provided evidence to support her allegations.  And after a hearing held before the SCSB on Monticello's application for expansion, Ms. Burns accidentally sent an email letter denying Monticello's application to several people, including Ms. Coleman.  The email was sent on March 26, 2008, but the letter was post-dated April 22, 2008, after the SCSB was to make its decision.  Ultimately, the SCSB did not deny or approve the application.  This uncertainty led Ms. Coleman to retain the law firm

---

[1] The court repeats the background contained in the court's order of September 28, 2011, for ease of reference.

of Stoel Rives, an action which allegedly instigated the SCSB's vindictive investigation against Ms. Coleman and Monticello.

The SCSB is a statutorily created government entity that is required to review and evaluate the performance of charter schools, hold those schools accountable for their performance, and monitor charter schools for compliance with federal and state laws, rules, and regulations. As a part of those duties, SCSB investigated Monticello. Ms. Coleman alleges that the investigation was done as part of SCSB's personal vendetta against her. As a result of the investigation, the SCSB issued findings concerning Ms. Coleman's administration of special educational services as Director of Monticello. Specifically, the SCSB found that Ms. Coleman failed to authorize and provide appropriate special education services as mandated by law, withheld pertinent information in a Utah State Office of Education special education compliance review, and created an environment where special education services were purposefully withheld from Monticello's special education students. Ms. Coleman alleges that these findings are baseless and intended to negatively affect her reputation.

Based on the findings, the SCSB issued directives to Monticello that required, among other things, that Monticello remove Ms. Coleman as director and bar her from serving in any capacity with the school, an act that Ms. Coleman claims precluded her from serving on the board of MAI. Ms. Coleman asked the SCSB for documentation to support the allegations in the findings and submitted several GRAMA requests seeking all documentation and support for the findings. The findings were later ratified by the Utah Office of Education and the Utah Board of Education. Ms. Coleman alleges that the findings and directives and their foreseeable consequences violated her state and federal rights.

<pre>

The Defendants in this matter filed a motion to dismiss the original complaint (Dkt. No. 9). In an order issued on September 28, 2011, the court granted this motion. But the court dismissed several of the claims without prejudice and granted Ms. Coleman leave to file an amended complaint. (Order, Sept. 28, 2011, Dkt. No. 32.) In response, Ms. Coleman filed a motion to amend. The court held a hearing on this motion on February 28, 2012, during which the court directed Ms. Coleman to remove all mention of the "Individual Defendants" and instead refer to specific individuals by name in her complaint. Ms. Coleman then filed the Amended Complaint that is now before the court.

**ANALYSIS**

General Matters

In their Opposition Memorandum (Dkt. No. 37), the Defendants[2] have included lengthy documentation of board meetings and emails that provide evidence as to why Ms. Coleman's claims may ultimately fail. But these documents are inappropriate for the court to consider on a motion for leave to amend. The court declines Defendants' invitation to take judicial notice of these facts. The court uses the same standard for a motion to amend as it would for a motion to dismiss, and must accept as true all well-pleaded factual allegations in the Amended Complaint. The court views these allegations in the light most favorable to Ms. Coleman. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

1. First Cause of Action: Procedural Due Process and Liberty Interest – Public Employee

Ms. Coleman seeks to bring suit against all the named Defendants for her termination as

---

[2]Defendant Marlies Burns submitted a separate Opposition Memorandum which did not include this information.

</pre>

Director of Monticello, which she claims occurred in violation of her procedural due process and liberty interest rights that are protected under the Fourteenth Amendment.

Procedural Due Process

For Ms. Coleman to claim a deprivation of procedural due process, she must demonstrate that she possessed a protected property interest. See Bd. Of Regents v. Roth, 408 U.S. 564 (1972). In its order issued on September 28, 2011, the court found that Ms. Coleman had made only conclusory allegations that she had a protected property interest. But the court stated, "If Ms. Coleman alleged that she was employed as director of Monticello for a specified period of time, as she did in her response, Ms. Coleman could allege a protected property interest." (Order, at 13, Dkt. No. 32.)

In her Amended Complaint, Ms. Coleman alleges this interest at several points:

| | |
|---|---|
| Paragraph 60: | "The Board retained Ms. Coleman to continue serving as Director, at least until the high school was constructed and operational." |
| Paragraph 80: | "Monticello's board offered to Ms. Coleman the position of Director of Monticello through the completion of the expansion through grades 10 through 12. Ms. Coleman accepted this offer to temporarily step down from the Board." |
| Paragraph 219: | "Ms. Coleman, due to her agreement with the Board relating to the construction and operation of Monticello's high school, had a protected property interest in continued employment at Monticello." |

While Ms. Coleman does not include any specifics about the terms and conditions of this contract, the Amended Complaint does allege a protected property interest when it is viewed in the most favorable light.

*Personal Participation*

The Defendants contest Ms. Coleman's claim on the basis that Ms. Coleman fails to allege any personal participation on the part of the individual Defendants relating to the SCSB's findings and directives.  In her Amended Complaint, Ms. Coleman replaces the term "Individual Defendants" with a list of the members of the SCSB and, in some instances, makes allegations against specific members.  (See, e.g., Am. Compl. ¶ 181 (alleging that Brian Allen "met privately with the Monticello Board and instructed them to terminate Ms. Coleman).)  The court notes that two of the Defendants, Yolanda Francisco-Nez and Tom Morgan, are never the subject of individual allegations and that one Defendant, John Pingree, is mentioned individually only once.  (Am. Compl. ¶ 191.)  While Ms. Coleman cannot prevail against these individuals simply as members of a board that acted unconstitutionally, these Defendants also cannot hide behind the shadow of the SCSB if they acted individually to thwart Ms. Coleman's due process rights.  In order to evaluate this issue, the court requires a more extensive factual background.  As a result, the court finds that it would be premature to dismiss any of the board members from the case, and GRANTS Ms. Coleman's motion to amend to state a cause of action for violation of procedural due process against all of the named Defendants.

<u>Liberty Interest</u>

The Fourteenth Amendment's due process clause entitles a public employee to certain procedures when her government employer threatens her liberty interest in her "good name and reputation as it affects [her] protected property interest in continued employment."  <u>Workman v. Jordan</u>, 32 F.3d 475, 480 (10th Cir. 1994).  In its order of September 28, 2011, the court found

that Ms. Coleman had not met the first element in the four-part <u>Workman</u> test[3] because she had not alleged that the individual defendants made statements that impugned her good name, reputation, honor, or integrity.

In her Amended Complaint, Ms. Coleman alleges that "Marlies Burns, Brian Allen, Scott Smith and Julie Adamic openly . . . manufactured false information about Ms. Coleman's performance as Director." (Am. Compl. ¶ 175.) She also alleges further acts by these individual Defendants that relate to their alleged motivations for propagating this information about Ms. Coleman. (<u>See</u> Am. Compl. ¶ 174.) As for the remaining three Defendants, Ms. Coleman alleges that they, as well as the other four Defendants mentioned above, publicly issued their "Findings of Investigation," which impugned her good name and reputation. (<u>Id.</u>) Ms. Coleman cannot prevail against these three Defendants unless she ultimately demonstrates their individual participation. But as the court discussed above, the court finds that Ms. Coleman has adequately alleged sufficient individual participation that it would be premature to dismiss her claim for this reason at this stage of the proceedings. Accordingly, the court GRANTS Ms. Coleman's motion to amend her complaint to include a violation of her Fourteenth Amendment liberty interest against all Defendants in her first cause of action.

2. Second Cause of Action: Procedural Due Process and Liberty Interest – Private Employee

Ms. Coleman has alleged that the Defendants violated her procedural due process and

---

[3] Ms. Coleman must meet a four-part test to show that her liberty interest was violated: (1) the statements impugned the good name, reputation, honor, or integrity of the employee; (2) the statements were false; (3) the statements occurred in the course of terminating the employee or must foreclose other employment opportunities; and (4) the statements were published. <u>Workman</u>, 32 F.3d at 480-81. Each of the four elements must be met.

liberty interest rights by preventing her from serving as the Chief Officer (CO) of MAI. This claim is distinct from the first cause of action discussed above, because here Ms. Coleman claims she was terminated from her position as a private employee due to inappropriate state action. This distinction implicates an unsettled area of the law.

> Arbitrary Government Interference

In its order of September 28, 2011, the court held that "Ms. Coleman need not allege more than at-will employment as CO of MAI." (Order, at 22, Dkt. No. 32.) The court cited Truax v. Raich for the propositions that an employee "has manifest interest in the freedom . . . to exercise his judgment without illegal interference or compulsion" and that, "by weight of authority, the unjustified interference of third persons is actionable although the employment is at will." 239 U.S. 33, 38 (1915). This case was decided long before the Supreme Court developed its current jurisprudence of procedural due process. But Truax has been cited with approval by a later Supreme Court decision, Greene v. McElroy, 360 U.S. 474, 492 (1959) (finding that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment").[4] And several circuits have applied Truax to procedural due process claims and found that it is not relevant whether the private employment at issue is at will. See Chernin v. Lyng, 874 F.2d 501, 506 (8th Cir. 1989) (concluding that the Fifth Amendment protects employees in their employment relations from arbitrary government interference regardless of whether the employees and employers may dissolve their relationship at will). See also

---

[4] Greene was decided on statutory grounds, so it is not directly applicable here.

DiMartini v. Ferrin, 889 F.2d 922 (9th Cir. 1989).

It is not entirely clear that the Tenth Circuit has followed this line of cases. In Lenz v. Dewey, the Tenth Circuit held that a bank president did not have a protected property interest in his continued employment as president. 64 F.3d 547, 551 (10th Cir. 1995). The court cited another Tenth Circuit case, Russillo v. Scarborough, for the proposition that "[o]rdinarily an employee's at-will status forecloses a property interest claim because the employee has no legitimate expectation of future employment." 935 F.2d 1167, 1170 (10th Cir. 1991). But at least one district court in the Tenth Circuit has distinguished the Tenth Circuit's decision in Lenz and found that the constitutional prohibition on arbitrary government interference with private employment includes at-will employees. Fernandez v. Taos Mun. Schs. Bd. of Educ., 403 F. Supp. 2d 1040 (D.N.M. 2005).[5] In Fernandez, the District Court of New Mexico denied a motion to dismiss on facts similar to those in this case. There, the plaintiff (acting pro se) alleged that the director of transportation pressured his private employer to fire him from his employment as a licensed and certified school bus driver. Id. at 1041. The court found that, "regardless of whether [plaintiff] is an at-will employee, [plaintiff] is complaining about arbitrary government interference with his private employment, which is a recognized constitutional theory." Id. The court distinguished the Lenz case by declaring that Lenz was decided on the grounds of qualified immunity. According to the Fernandez court, because there was no allegation of bad faith on the part of the regulators or evidence that the regulators violated any law in Lenz, there was no reason to believe that they knew or should have known that their warnings to the bank board

---

[5] Importantly, this case was decided by the Honorable Paul Kelly, Jr., the same judge who wrote the Lenz opinion.

(which resulted in the bank president's termination) triggered due process rights.  Accordingly, they were entitled to qualified immunity.  Id. at 1043, n.1.

The court agrees with the reasoning in the Fernandez case, which makes clear that arbitrary government interference with private employment is a recognized constitutional theory, and that the Tenth Circuit's holding in Lenz does not foreclose such a claim even if the employee is at will.  Id.  But even if the Defendants in this case violated Ms. Coleman's right to be free from arbitrary government interference, the court must still examine whether the Defendants are protected by the doctrine of qualified immunity.

Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Weigel v. Broad, 544 F.3d 1143, 1153 (10th Cir. 2008) (quoting Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001)).  This does not require that the plaintiff show that the very act in question was previously held unlawful.  Rather, the contours of the law "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Hope v. Pelzer, 536 U.S. 730, 739 (2002).

The discussion above makes clear that the law in the Tenth Circuit related to the issue of government interference is not clearly established.  While Lenz may not have foreclosed the

possibility of a government interference claim for an at-will employee, it also "did not discuss, let alone decide the contours of a federal right protecting against arbitrary government interference with private employment." Fernandez, 403 F. Supp. 2d at 1043.  As a result, the Defendants have not violated a clearly established law and are entitled to qualified immunity.

The court DENIES Ms. Coleman's motion to amend her complaint to add a cause of action for constitutional interference with her private employment as CO of MAI.

3.  Third Cause of Action:  Unconstitutionality of Utah Code Ann. § 53A-1a-509

Ms. Coleman's third cause of action is a facial challenge to the constitutionality of Utah Code Ann. § 53A-1a-509, which allows the "chartering entity" to "remove a school director" in certain circumstances.  Specifically, Ms. Coleman claims that "Utah Code Ann. § 53A-1a-509 is unconstitutional to the extent it allows the Individual Defendants to interfere with and remove employees and/or board members of a private corporation." (Am. Compl. ¶ 255.)

But the SCSB board members are not proper defendants for a constitutional challenge of the statute, especially because Ms. Coleman's real complaint is that she believes that the Defendants did not follow the statute. (See Am. Compl. ¶ 185 ("The required circumstances were not met [in the way in which Ms. Coleman was removed] as Director, because Monticello was never given notification in writing that it was out of compliance with its charter or with § 53A-1-507, nor was Monticello given a reasonable time to remedy the alleged deficiencies").)

Because Ms. Coleman has alleged that the SCSB board members failed to abide by the statute, any ruling as to the constitutionality of the statute would be an advisory opinion.  The court cannot issue such an opinion, and DENIES Ms. Coleman's motion to add this third cause of action as a result.

4. Fourth Cause of Action:  Constitutional Defamation

Ms. Coleman's fourth cause of action is identical to her first and second causes of action for violation of her liberty interest in her good name and reputation as it affects her protected property interest in continued employment.  This cause of action is duplicative, and the court therefore DENIES Ms. Coleman's motion to add this claim.

5. Fifth Cause of Action:  Interference with Familial Association

Ms. Coleman alleges that the Defendants interfered with her right of familial association. Specifically, she claims that the findings and directives issued by the SCSB and the ensuing consequences "precluded Ms. Coleman from directing the upbringing and education of her children and to be involved with her children at Monticello."  (Am. Compl. ¶ 274.)  These are clearly established rights.  See Troxel v. Granville, 530 U.S. 57, 65 (2000) ("the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized"); Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary, 268 U.S. 510, 534 (1925) (recognizing the right to "direct the upbringing and education of children").  But as the court stated in its previous order of September 28, 2011, these general rights to direct a child's education are not violated by the facts alleged in this case.

At issue in Pierce was an Oregon statute that would have made public school education of all children compulsory.  The Supreme Court ruled that such a statute would impermissibly interfere with parental choice over their children's education.  Id.  Importantly, the Court stated that "[n]o question is raised concerning the power of the state reasonably to regulate all schools, to inspect, supervise and examine them, their teachers and pupils."  Id.  Ms. Coleman has not been denied the power to choose the type of school she desires for her children.  Instead, she has

been subjected to what the Defendants argue is a reasonable regulation of Monticello and its teachers. Specifically, she has been prevented from associating with the teachers at the school that her children currently attend and from being involved with her children's education in a particularized way.

It is possible that these inhibitions do intrude upon Ms. Coleman's interest in the "care, custody, and control" of her children. But Ms. Coleman has not pointed to any case that clearly supports such a particularized right. On the contrary, the Tenth Circuit has found that parents do not have a clearly established constitutional right to enter onto school property. See McCook v. Springer Sch. Dist., 44 Fed. App'x 896, 910 (10th Cir. 2002) (unpublished) (finding summary judgment proper where plaintiff parents presented no authority establishing a constitutional right to go onto school property). And because there is no clearly established law that the prohibition in this case (in which Ms. Coleman was prevented from serving in a volunteer capacity at Monticello and from associating with the teachers and other school officials there) is a violation of the constitutional right to familial association, the Defendants are entitled to qualified immunity.

In addition, the court dismissed Ms. Coleman's first claim of interference with familial association without prejudice because it found that Ms. Coleman might be able to allege the specific intent to affect family relationships that would be necessary to support such a claim. Ms. Coleman has failed to do so in her Amended Complaint. She does not allege that the Defendants personally engaged in conduct "directed at [her relationships with her children] with knowledge that the statements or conduct would adversely affect [those relationships]." See Lowery v. Cnty. of Riley, 522 F.3d 1086, 1092 (10th Cir. 2008). See also Trujillo v. Bd. of Cnty. Comm'rs, 768

13

F.2d 1186, 1189-90 (10th Cir. 1985) (requiring specific intent to adversely affect family relationship in order to bring a familial association claim). At most, Ms. Coleman alleges that the Defendants knew that her children attended Monticello (Am. Compl. ¶ 178) when they issued the findings and directives. While Ms. Coleman states that her "familial relationship was irrevocably damaged by the intentional actions" of the Defendants (Am. Compl. ¶ 272), Ms. Coleman does not allege that those findings and directives were issued with the specific intent of adversely affecting her relationship with her children. At any rate, such an allegation would be conclusory unless Ms. Coleman also pleaded facts that demonstrated that the findings and directives were issued in order to interfere with her familial relationship.

For the foregoing reasons, the court DENIES Ms. Coleman's request to add this fifth cause of action.

6.  Sixth Cause of Action:  Intentional Infliction of Emotional Distress

Ms. Coleman's sixth cause of action is directed only against Defendant Marlies Burns. In order for Ms. Coleman to bring a claim of intentional infliction of emotional distress against Ms. Burns, she must show that Ms. Burns's actions rise to the level of extreme and outrageous conduct. Such a claim requires more than "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Cabaness v. Thomas, 232 P.3d 486, 500 (Utah 2010).

Ms. Coleman alleges that Ms. Burns embarked on a mission to destroy Ms. Coleman's professional career, as well as her "familial, social, and religious pursuits." (Am. Compl. ¶ 280.) In support of her assertions, Ms. Coleman pleads instances in which Ms. Burns withheld information that was given to other charter school directors (id. at ¶¶ 72, 77); in which Ms. Burns failed to provide support for a list of concerns and deficiencies regarding Monticello (id. at ¶¶ 85-

86); and in which Ms. Burns met with parents in order to "manufacture some kind of evidence of violations of law or policy" with which to attack Ms. Coleman (id. at ¶¶ 162-65).

The court finds that Ms. Coleman has not plead facts that would rise to the level of a claim for intentional infliction of emotional distress. The bar for such a claim is a high one, and the issue of whether Ms. Burns's conduct is outrageous enough to incur liability is a legal question for the court to resolve. See Metcalf v. Metropolitan Life, Inc., 961 F. Supp. 1536 (D. Utah 1997).

"Mere discharge from employment" does not rise to the level of outrageous or intolerable conduct by an employer. Sperber v. Galigher Ash Co., 747 P.2d 1025, 1028 (Utah 1987). And even when that discharge "may have been based on incorrect information," the conduct is still not deemed outrageous. Dubois v. Grand Central, 872 P.2d 1073, 1078 (Utah Ct. App. 1994). Liability only exists where the conduct is "atrocious, and utterly intolerable in a civilized community," Retherford v. AT&T Comms., 844 P.2d 949, 978 (Utah 1992), and "offend[s] against the generally accepted standards of decency and morality." Bennett v. Jones, Waldo, Holbrook & McDonough, 70 P.3d 17, 31 (Utah 2003).

An example of conduct that attains the level of "utterly intolerable" behavior occurred in Cabaness v. Thomas, 232 P.3d 486 (Utah 2010). In that case, the Utah Supreme Court held that summary judgment was inappropriately granted against Mr. Cabaness, who alleged that he suffered verbal abuse, intimidation, and harassment at the hands of his supervisor, Mr. Thomas. Id. at 500. In addition to this verbal abuse, Mr. Thomas would disregard basic safety concerns, such as refusing to ground a pole with a primary line of 7200 volts before requiring Mr. Cabaness to work on it. Id. And Mr. Thomas would frequently require Mr. Cabaness to perform electrical

work in the rain.  Id.  The court held that these facts could constitute the requisite outrageous behavior.

The facts in this case do not.  Ms. Coleman has alleged that Ms. Burns withheld information from her and that Ms. Burns made false accusations against Ms. Coleman in order to get Ms. Coleman fired.  Assuming the truth of these allegations, Ms. Burns's actions were petty, unprofessional, and even vicious.  But they were not "atrocious" and "utterly intolerable."

As a result, the court DENIES Ms. Coleman's motion to amend her complaint with a cause of action for intentional infliction of emotional distress against Ms. Burns.

**ORDER**

For the reasons stated above, the court DENIES IN PART and GRANTS IN PART Ms. Coleman's Motion to Amend (Dkt. No. 34).  Ms. Coleman may proceed with her first cause of action under 42 U.S.C. § 1983 against all Defendants, in which she alleges that the termination of her public employment occurred in violation of her procedural due process rights and her liberty interest in her good name and reputation.  But the court finds that the remaining five causes of action would be futile.  Accordingly, the court DENIES Ms. Coleman's motion for leave to amend her second, third, fourth, fifth, and sixth causes of action.

SO ORDERED this 25th day of May, 2012.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge